14

POSTED ON WEBSITE

NOT FOR PUBLICATION

FILED

JAN – 9 2007

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re ) Case No. 05-15300-B-7
)
Donald M. Turner, Sr. and ) DC No. MTH-1
Benita L. Cushingberry-Turner, M.D., )
)
Debtors. )
)

**MEMORANDUM DECISION CONDITIONALLY GRANTING IN
PART AND DENYING IN PART MOTION FOR RELIEF FROM STAY**

**This memorandum decision is not approved for publication and may not be cited
except when relevant under the doctrine of law of the case or the rules of res
judicata and claim preclusion.**

Michael T. Hertz, Esq., of Lang, Richert & Patch appeared on behalf of the creditor
Nevocal Enterprises, Inc., dba KH Construction.

Beth Maxwell Stratton, Esq., appeared in her capacity as the chapter 7 trustee.

Before the court is a motion for relief from the automatic stay under 11 U.S.C.
§ 362 (the "Motion"). Nevocal Enterprises, Inc., dba KH Construction ("KH") seeks
permission to liquidate its claim against the estate and to foreclose its mechanic's lien
against real property of the estate. The dispute involves mandatory arbitration of a state-
court proceeding that was commenced prepetition against the debtors Donald M. Turner,
Sr. and Benita L. Cushingberry-Turner, M.D. (the "Debtors") in the Fresno County
Superior Court (case number 04 CE CG 02711: the "State Court Litigation"). KH also
asks permission to adjudicate, in the State Court Litigation, a dispute over funds
(undisbursed construction loan proceeds) being held by Chicago Title Company. Beth
Maxwell Stratton, the chapter 7 trustee (the "Trustee") opposes the Motion. For the
reasons set forth below. KH's Motion will be conditionally granted in part and denied in

240

1  part. KH also asks the court to waive the provisions of Federal Rule of Bankruptcy

2  Procedure 4001(a)(3) which automatically stays the effect of this ruling for ten days

3  unless the Rule is waived. That request will be granted.

4      This memorandum decision contains the court's findings of fact and conclusions

5  of law as required by Federal Rule of Civil Procedure 52(a) (made applicable to this

6  contested Motion by Federal Rule of Bankruptcy Procedure 7052). The bankruptcy court

7  has jurisdiction pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 362[1] and General Orders

8  182 and 330 of the U.S. District Court for the Eastern District of California. This is a

9  core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

10

11  **BACKGROUND**

12  **The Mechanic's Lien Arbitration.**

13      Prior to commencement of this bankruptcy, KH contracted with the Debtors to

14  perform construction work on a parcel of property which the Debtors were converting to a

15  walk-in medical facility (the "Medical Building"). Problems were encountered in the

16  construction project and completion of the Medical Building was delayed. Huge cost

17  overruns occurred based on alleged design flaws and change orders. Completion delays

18  prevented the Debtors from using the Medical Building and a dispute developed over the

19  quality of, and payment for the work that was done. KH recorded a mechanic's lien

20  against the Medical Building (the "Mechanic's Lien"). KH commenced the State Court

21  Litigation to foreclose its Mechanic's Lien in September 2004 and filed a demand for

22  arbitration with the American Arbitration Association. In October 2004, the Debtors and

23  KH stipulated that the State Court Litigation could be resolved by binding arbitration (the

24

25      [1]Unless otherwise indicated, all chapter, section and rule references are to the

26  Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy

27  Procedure, Rules 1001-9036, as enacted and promulgated prior to October 17, 2005, the
effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of

28  2005, Pub. L. 109-8, Apr. 20, 2001, 119 Stat. 23.

1   "Arbitration").

2        The Debtors commenced this bankruptcy under chapter 11 on July 1, 2005. The

3   State Court Litigation and the Arbitration were both stayed upon the commencement of

4   this case. After an unsuccessful effort to negotiate a settlement with KH, and reorganize

5   based on revenue to be generated from the Medical Building, the Debtors consented to

6   convert this case to chapter 7 on May 12, 2006.

7   **The Estate's Defenses and Counter-Claims.**

8        The Trustee contends that the bankruptcy estate has various affirmative defenses

9   and monetary counter-claims against KH based on alleged construction defects and

10  performance problems (the "Estate's Claims"). The Debtors were not able to assert the

11  counter-claims and defenses in the Arbitration because to do so required the payment of a

12  $5,000 filing fee. The Trustee wants to preserve her right to assert the Estate's Claims, if

13  necessary, but the estate does not have the requisite filing fee either, and it has no funds to

14  defend the Arbitration at this time. The Trustee does not oppose foreclosure of the

15  Mechanic's Lien. However, she does oppose general relief because, under applicable

16  State law, the Estate's Claims must be asserted in the Arbitration, or they may be lost to

17  the estate by the doctrines of res adjudicata and collateral estoppel.

18  **The Retention Money.**

19       The Debtors obtained a construction loan to finance the construction project and to

20  pay their contract with KH. Progress payments, less a retention, were made to KH as the

21  construction progressed. When the work stopped, Chicago Title Company was, and still

22  is, holding loan proceeds in the amount of $55,272.70 representing undisbursed retention

23  payments (the "Retention Money").[2] KH did not plead a cause of action in the State

24

25       [2]The Retention Money represented the approximate unpaid balance of the original

26  construction contract, exclusive of change orders and other demands. Chicago Title

27  Company has attempted to distribute the Retention Money from its escrow account. It
    has twice issued a check payable jointly to the Debtors and KH and sent those checks to

28  Debtors' counsel. The parties have not been able to agree on an arrangement to cash the

3

1   Court Litigation for declaratory relief regarding the Retention Money. However, KH

2   contends that it has some interest in the Retention Money and it seeks relief from stay to

3   have that issue adjudicated in the Arbitration as well.

4   **Issues Presented.**

5   The first issue is whether cause exists to allow the State Court Litigation and the

6   Arbitration to proceed at this time. KH has filed a proof of claim in excess of $226,000.

7   The proof of claim states that KH's claim is fully secured by the Mechanic's Lien, *i.e.*, it

8   makes no allocation for any unsecured claim. To the extent that KH merely seeks to

9   enforce its secured claim by foreclosing the Mechanic's Lien, the Trustee does not oppose

10  KH's Motion. The Trustee acknowledged at oral argument that the Medical Building

11  does not appear to have any equity over and above the consensual liens and the

12  Mechanic's Lien. The Trustee has not sought to remove the State Court Litigation to the

13  bankruptcy court, and the Trustee does not here dispute KH's contention that the estate is

14  bound by the Debtors' prepetition agreement to arbitrate the breach of

15  contract/foreclosure issues. However, KH also seeks a money judgment which could

16  later be binding on the estate as the basis for an unsecured "deficiency" claim. To the

17  extent that KH may want to bar the Trustee from prosecuting the Estate's Claims and bind

18  the estate to a potentially large unsecured claim, the Trustee opposes the Motion. Again,

19  the Trustee contends that the estate currently has no funds to pay for a defense of the

20  Arbitration, or for prosecution of the Estate's Claims. The Trustee also contends that

21  litigation over KH's potential unsecured claim is premature.

22  The second issue is whether KH's disputed claim to the Retention Money should

23  be adjudicated in the State Court Litigation. The Trustee contends that the Retention

24  Money is property of the bankruptcy estate and that KH's interest, if any, is a "core"

25

26

27  checks. At oral argument, the Trustee represented that the Retention Money is still at the

28  Title Company.

4

1  proceeding which should be litigated in the bankruptcy court.[3]

2

3  ## ANALYSIS AND CONCLUSIONS OF LAW

4  **Applicable Law.**

5  KH moves for relief under § 362(d) which provides:

6  On request of a party in interest and after notice and a hearing, the court shall grant
relief from the stay provided under subsection (a) of this section, such as by
7  terminating, annulling, modifying, or conditioning such stay–

8  (1) for cause, including the lack of adequate protection of an interest in property
of such party in interest;
9

(2) with respect to a stay of an act against property under subsection (a) of this
10  section, if–

11  (A) the debtor does not have an equity in such property; and

12  (B) such property is not necessary to an effective reorganization.

13  KH moves for relief under both subsections 362(d)(1) and (d)(2). However, the

14  grounds for relief are independent and relief can be granted under either subsection.

15  Pursuant to § 362(g), KH has the burden of proof on the issue of the Debtor's equity in

16  the Medical Building. The party opposing the motion for relief has the burden of proof

17  on all other issues. Although the Trustee has the ultimate burden of proof on the "cause"

18  issue, KH must produce some evidence in the first instance to support the "cause"

19  allegation. *Tirey Distributing Company v. Sloan (In re Tirey Distributing Co.)*, 242 B.R.

20  717, 723 (Bankr. E.D. Okla. 1999) (quoting *In re Tursi*, 9 B.R. 450, 453 (Bankr. E.D. Pa.

21  1981)).

22  / / /

23  / / /

24  / / /

25  _____

26  [3]On November 9, 2006, the Trustee filed an adversary proceeding against KH to
determine the nature, extent and validity of KH's interest in the Retention Money
27  (adversary proceeding number 06-1308). KH answered the adversary proceeding and
28  contends, *inter alia*, that the issue is already being litigated in the State Court Litigation.

**KH's Secured Claim and Foreclosure of the Mechanic's Lien.**

The relief which KH seeks has multiple components. KH's claim is secured by a Mechanic's Lien against the Medical Building. First and foremost, KH desires to judicially foreclose its Mechanic's Lien. The Medical Building is subject to at least one senior lien and it is not clear whether the Medical Building is even occupied at this time. If a judicial foreclosure was the extent of the relief being sought, this ruling would be straightforward. Similarly, if it was certain that foreclosure of the Mechanic's Lien would fully satisfy KH's claim, or if KH were to waive its right to an unsecured "deficiency" judgment after foreclosure, this dispute could be easily resolved. Notwithstanding the Estate's Claims, the Trustee does not oppose KH's request to judicially foreclose the Mechanic's Lien.

There appears to be little or no equity in the Medical Building. The term "equity" in subsection 362(d)(2)(A) is defined to mean the value of the subject property in excess of the total liens and charges. *Stewart v. Gurley*, 745 F.2d 1194, 1196 (9th Cir. 1984). The Trustee has conceded that the value of the Medical Building does not exceed the amount of the attached liens. Similarly, the Medical Building is not necessary to an effective reorganization. When a creditor establishes that the debtor does not have equity in its property within the meaning of § 362(d)(2)(A), the burden shifts to the trustee to establish that the property is nevertheless "necessary to an effective reorganization." § 362(d)(2)(B). Again, this is not at issue. This is a chapter 7 proceeding, the Trustee is not operating the Medical Building and no reorganization is in prospect.

On the surface, it therefore appears that KH should be allowed to foreclose the Mechanic's Lien. A prompt foreclosure will, in theory, allow KH to maximize the value of its collateral and protect the collateral from loss. However, the potential benefits of that relief must be balanced against the possibility of an unfair burden to the estate and the other creditors. As discussed below, judicial foreclosure of the Mechanic's Lien is inextricably tied to a judicial proceeding which could bind the estate with regard to the allowance of an unsecured "deficiency" claim after the foreclosure. While foreclosure of

6

the Mechanic's Lien may be appropriate at this time, the need to litigate the Estate's Claims and KH's resulting unsecured claim, if any, is clearly premature.  The factors which define when it may be appropriate to adjudicate the Estate's Claims, and fix KH's unsecured claim, are not a function of adequate protection, equity in the property, or an effective reorganization.  Accordingly, the court must decide whether "cause" exists to force the Trustee to participate in the Arbitration at this time.  Absent some vehicle or means to disconnect KH's need to judicially foreclose from the burden of other proceedings which might prevent the Trustee from protecting the estate, the paramount interests of the estate will necessarily determine the outcome of both issues.

**KH's Unsecured Deficiency Claim After Foreclosure.**

A secured claim filed in a bankruptcy case can be bifurcated into two parts, secured and unsecured, if the claim exceeds the value of the collateral.  § 506(a).[4]  If foreclosure of the Mechanic's Lien does not fully satisfy KH's secured claim, KH will (presumably) want to assert an unsecured "deficiency" claim against the bankruptcy estate.  The amount of the secured claim is a function of the value of the collateral which must be determined "in light of the purpose of the valuation and of the proposed disposition or use" of the collateral.  *Id.*  Liquidation of KH's unsecured claim will require that KH obtain a deficiency judgment in the State Court Litigation after foreclosure of its Mechanic's Lien.  Under California law, the procedure for obtaining a deficiency judgment after judicial foreclosure of a mechanic's lien is governed by the

---

[4]Section 506(a) provides:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.  Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

7

1  same rules which govern the judicial foreclosure of a mortgage.  California Civil Code
2  § 3151.
3        A civil action to foreclose a mortgage against real property is governed by
4  California Code of Civil Procedure § 726.  KH must first establish in the State Court
5  Litigation that it is entitled to foreclose the Mechanic's Lien and obtain a court order
6  directing that the encumbered property, the Medical Building, be sold with the proceeds
7  applied to payment of the secured debt.  Cal.CodeCiv.P. 726(a).  Presumably, this part of
8  the foreclosure process can be accomplished by stipulation with Trustee, who does not
9  seek to liquidate or otherwise dispose of the Medical Building for the benefit of the
10 estate.
11       The difficulty from the Trustee's standpoint arises under Cal.CodeCiv.P. § 726(b),
12 which provides that the foreclosure decree "shall declare the amount of the indebtedness
13 or right so secured" and shall "determine the personal liability of any defendant [here, the
14 bankruptcy estate] for the payment of the debt secured by the mortgage . . . and shall
15 name the defendants against whom a deficiency judgment may be ordered following the
16 [foreclosure] proceedings . . . ."  If KH desires a deficiency judgment to support an
17 unsecured claim against the estate, it must seek that determination, "upon application . . .
18 within three months of the date of the foreclosure sale . . . ."  Cal.CodeCiv.P. § 726(b).  At
19 the hearing, the court must take evidence of the fair market value of the Medical Building
20 and render a judgment for "the amount by which the amount of the indebtedness . . .
21 exceeds the fair value of the real property . . . sold as of the date of sale."  Cal.CodeCiv.P.
22 § 726(b).  In other words, under applicable State law, all of the factors which might
23 determine KH's unsecured claim, except the fair market value of the collateral, must be
24 adjudicated before the foreclosure decree is entered.  Therein lies the problem.  KH and
25 the Trustee both agree that if this court grants relief to KH, then the Trustee must appear
26 in the Arbitration and assert all claims, defenses and counter-claims, which the estate
27 holds against KH, or be barred by the doctrines of res adjudicata and collateral estoppel
28 from ever raising those issues.  At this juncture, the State's judicial foreclosure rules, and

8

the Bankruptcy Code's equitable policies of administration and distribution, appear to clash irreconcilably.

The Trustee responds that the estate has no resources to fund its participation in the Arbitration at this time. At the same time, the Trustee does not oppose KH's efforts to foreclose the Mechanic's Lien. The Trustee's opposition derives from her duty to protect the estate from unnecessary legal expenses and a potentially burdensome or unfair claim. The Trustee understands that the estate will, in theory, benefit from a prompt foreclosure of the Mechanic's Lien. There is no equity in the Medical Building which could be liquidated for the other creditors. The estate should not bear the burden to maintain and insure the Building.[5] If KH is not allowed to maximize the value of its collateral, and the Medical Building is diminished or lost through vandalism, calamity, or a senior lien foreclosure, KH could wind up as a sold-out junior creditor and the full amount of its claim would remain against the estate.

Logically, the effort to adjudicate the Estate's Claims will produce no benefit to either KH or the estate unless and until (1) KH completes its foreclosure and determines whether to seek a deficiency judgment, (2) the Trustee determines if there will be any assets to actually distribute to unsecured creditors (after allowance of administrative and priority claims), and (3) the Trustee determines whether the cost of litigating the Estate's Claims will produce a net benefit to the estate and the other unsecured creditors. If the Trustee administers the estate and determines that there is little or no money to distribute to unsecured creditors, then there is no practical reason for KH to even have a deficiency claim, but that question cannot be addressed effectively until much later in the case.

---

[5]If the Medical Building is burdensome or of inconsequential value and benefit to the bankruptcy estate, then the Trustee should seek leave to abandon the Building pursuant to § 554(a). Likewise, KH can request an order directing abandonment of the Medical Building pursuant to § 554(b). However, abandonment of the property will not eliminate the need for relief from the automatic stay if KH intends to proceed with the judicial foreclosure.

**Cutting the Mythical Gordian Knot.**

Greek Mythology teaches that Alexander the Great cut the insolvable Gordian knot with a sharp sword. However, this case demands a more practical solution which appears to be within KH's control. KH has a strategic decision to make. If KH takes a "litigate or lose it" approach and demands that the Trustee litigate all of the Estate's Claims prior to the judicial foreclosure, as contemplated in Cal.CodeCiv.P. § 726(b), then the court is not persuaded that cause exists to force the Trustee's hand and burden the estate with that expense at this time. The court will have no choice but to deny KH's Motion to proceed with the State Court Litigation in the interest of protecting the estate from an unfair result. Conceptually, KH and the Trustee could enter into a binding stipulation in the State Court Litigation which (1) fixes KH's secured claim for purposes of a judicial foreclosure of the Mechanic's Lien, and provides for immediate commencement of that process without unnecessary legal expense, (2) bifurcates the Estate's Claims for litigation at another time. and possibly in another forum, (3) waives any future issue preclusion defenses related thereto, and (4) provides for litigation, if necessary, of the Estate's Claims and defenses in a subsequent proceeding, such as in conjunction with KH's application for a deficiency judgment, or in a § 502 claim objection proceeding. If that could be accomplished, then the court sees no reason why KH could not be granted limited relief to proceed with the immediate judicial foreclosure of its Mechanic's Lien.

**KH's Claim to the Retention Money is Not Part of the State Court Litigation.**

KH seeks relief to prosecute a declaratory relief claim to the Retention Money. KH contends that it has a specific interest in the Retention Money (separate from its general right to payment on the construction contract) and that its interest should be litigated in the State Court Litigation. The court is not so persuaded. The court has reviewed the complaint filed in the State Court Litigation and the petition that KH filed to commence the Arbitration. Neither of those pleadings appears to state a claim for relief with regard to specific rights against the Retention Money. The court agrees with the Trustee. The Retention Money came from funds borrowed by the Debtors. The lender

10

1  holds a claim for that money against the bankruptcy estate secured by a lien against
2  property of the estate.  As such, the Retention Money appears to be property of the estate
3  free of any interest or right of KH, unless this court subsequently determines otherwise.[6]
4  This court has jurisdiction to determine what is, and is not, property of the estate and to
5  determine liens and interests against such property.  The court is not persuaded that cause
6  exists to force the Trustee to litigate those issues with regard to the Retention Money
7  outside of the bankruptcy court.

8  **Waiver of Rule 4001(a)(3).**

9        Federal Rule of Bankruptcy Procedure 4001(a)(3) provides that an order granting a
10 motion for relief from an automatic stay is stayed until the expiration of 10 days after the
11 order is entered, unless the court orders otherwise.  KH requests that the court waive the
12 application of this rule, for no particular stated reason.  Rule 4001(a)(3), which was added
13 by the 1999 amendments to the Federal Rules of Bankruptcy Procedure, recognizes that
14 motions granting relief from the automatic stay can have enormous consequences for the
15 parties involved and can often dictate the success or failure of the entire bankruptcy case.
16 Rule 4001(a)(3) enables the debtor, or other party who opposes relief from stay, to seek a
17 stay pending appeal of an adverse ruling.  *9 Collier on Bankruptcy*, (15th Ed. Revised),
18 ¶ 4001.04A, pg. 4001-18.  "[W]ithout a stay  pending appeal, appeals from such orders
19 can often become moot if the party granted relief proceeds with a sale or some other
20 action that cannot be easily undone." *Id.* at 4001-18, 19.  For that reason, the court is
21 reluctant to make any ruling which prematurely terminates the parties' appellate remedies.
22        Here, the protection of Rule 4003(a)(3) appears to be unnecessary.  The court is
23 prepared to grant conditional limited relief to KH on the only issue which the Trustee did

---

25   [6]KH alleges in defense of the Trustee's adversary proceeding (see footnote 3,
26 supra) that its interest in the Retention Money is already the subject of the State Court
27 Litigation.  The court is not adjudicating that issue here.  This ruling is not intended to
   prejudice KH's right to assert that defense for full and final adjudication in the adversary
28 proceeding.

1   not oppose – the judicial foreclosure.  It is highly unlikely that KH will be able to do

2   anything meaningful with regard to the judicial foreclosure within ten days after an order

3   is entered.  The court is denying the Motion with regard to all other issues.  As to those

4   issues, KH would be the appealing party.  KH does not appear to need the protection of

5   Rule 4003(a)(3) for any reason.

6   **Conclusion.**

7        Based on the foregoing, the court finds and concludes that the motion for relief

8   from the automatic stay filed by Nevocal Enterprises, Inc., dba KH Construction will be

9   conditionally granted in part and denied in part.  If KH and the Trustee are able to enter

10  into a stipulation as outlined above, then the Motion will be granted to the extent

11  necessary to complete a judicial foreclosure of KH's Mechanic's Lien.  A copy of the

12  stipulation shall be attached to and incorporated into this court's order and shall be filed

13  in the State Court Litigation and the Arbitration.  If KH declines to enter into such a

14  stipulation at this time, then the Motion to proceed with the State Court Litigation will be

15  denied without prejudice.

16       KH's Motion will be denied without prejudice to the extent that KH seeks any

17  relief beyond completion of its judicial foreclosure.  If KH asserts an unsecured

18  "deficiency" claim against the estate, then liquidation of that claim, and any Estate

19  Claims, will require further judicial proceedings.  KH and the Trustee are free to stipulate

20  as to a procedure for resolving the post-foreclosure issues.

21       The Motion will be denied with regard to the Retention Money.  Finally, the

22  request for a waiver of the provisions of Rule 4001(a)(3) will be granted.

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1    After the parties have had an opportunity to work out a stipulation, the Trustee

2 shall meet and confer with counsel for KH, and shall submit a proposed order consistent

3 with this Memorandum.  If the parties cannot agree on a form of order, either party may

4 set this matter on calendar for further hearing with regard to the form of the order on ten

5 days' notice.

6    Dated: January ___9___, 2007

7

8                                                    _____

9                                                    W. Richard Lee, Judge
                                                     United States Bankruptcy Court

13

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United
States Bankruptcy Court for the Eastern District of California
hereby certifies that a copy of the document to which this
certificate is attached was mailed today to the following
entities listed at the address shown on the attached list or
shown below.

Benita Cushingberry-Turner,
3672 W MESA
FRESNO, CA 93711

Donald Turner
3672 W MESA
FRESNO, CA 93711

Hagop Bedoyan
5200 N Palm Ave #211
Fresno, CA 93704

Beth Stratton
PO Box 3930
Pinedale, CA 93650

Jeffrey Wall
6067 N Fresno St #101
Fresno, CA 93710-5264

Office of the U.S. Trustee
2500 Tulare Street, Rm 1401
Fresno, CA 93721

Michael Hertz
PO Box 40012
Fresno, CA 93755-0012

DATED: 1/09/07

By: *Leticia Pietrowski*
    **Deputy Clerk**

EDC 3-070 (New 4/21/00)